UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| J3 ENERGY GROUP, INC., | : | Case No. 14-00532 (JJT) |
| | : | |
| Debtor. | : | |
| | : | |

**APPLIED ENERGY PARTNERS' AND CHRISTOPHER GUTTERIDGE'S
RESPONSE TO OBJECTIONS TO CLAIM NUMBERS 8 AND 9**

Applied Energy Partners ("AEP") and Christopher Gutteridge ("Gutteridge" and together with AEP, collectively "Respondents") file this response to the Objections of the Chapter 7 Trustee to Claim Number 8 of Applied Energy Partners [Dkt. No. 471] and Claim Number 9 of Christopher Gutteridge [Dkt. No. 472], in support thereof, the Respondents respectfully state as follows:

Claim Number 9 of Christopher Gutteridge

1. The Trustee's Objection to Claim Number 9 lacks merit. Gutteridge's claim should not be diminished by the amount he credit bid at the sheriff's auction of the Debtor's stock because that is not the correct measure of value.

2. There is no Bankruptcy Code provision on point. In the absence of guidance under the Bankruptcy Code, courts look to state law to determine the nature and extent of the parties' rights. *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

3. There is no Pennsylvania statute directly on point. The Pennsylvania Deficiency Statute, however, provides clear guidance by analogy. The Pennsylvania Deficiency Statute is used to measure the amount potentially

{01716894;v1 }

1

still owed by an obligor after collateral is sold for the benefit of a creditor. Under the Deficiency Statute, the fair market value of the collateral sold is used to calculate the amount of the deficiency. 42 PA. CONS. STAT. § 8103(a). The amount bid by creditors at sheriff's auction is not used. *Id*.

4. Here, the fair market value of the Debtor's stock is no more than $12,000. That was the amount of the only cash bid received for the Debtor's assets when the Trustee attempted to auction the Debtor's assets during the first Chapter 7 portion of this case. The only amount that should be applied against the judgment from the sheriff's auction is the fair market value of the Debtor's stock, which was $12,000 at the relevant time.

5. The Trustee's additional contention that Gutteridge's claim should be offset by the amount of the management fees paid to AEP is similarly misplaced. As discussed in greater detail below, AEP provided valuable services to the Debtor in exchange for the management fees it received. None of the management fees attributable to AEP should be applied against the judgment AEP and Gutteridge hold against the Debtor. It must also be pointed out that although the term "management fees" has been applied to the sums received by AEP, a significant portion of the amounts received were in fact operating expenses of the Debtor, because the Debtor did not have sufficient funds to pay the expenses in the ordinary course of business, and because the Debtor had <u>no</u> employees of its own to perform the tasks required to operate the Debtor's business. Those portions of the "management fees" are more properly characterized as

reimbursement to AEP of those operating expenses of the Debtor that AEP advanced.

6. AEP shouldered all of the responsibility associated with recuperating and operating the Debtor's business after the sudden departure of the previous owner and all of the Debtor's legacy employees. AEP should not, and cannot, be compelled to provide those services free of charge simply because AEP holds a judgment against the Debtor. AEP provided its services at cost. It did not make any profit on the management fees charged to the Debtor.

7. As such, Gutteridge's claim should be allowed for the full amount of the underlying judgment, notwithstanding the management fees paid to AEP.

Claim Number 8 of Applied Energy Partners

8. Similarly, the basis of the Trustee's objection to AEP's claim also lacks merit. Accepting the facts as alleged in the AEP Objection as true,[1] AEP did not need Court permission to operate a business that it ostensibly owned. Under the previous ownership of Mr. Russial, the Debtor's monthly payroll was $22,024.52.[2] After the change in ownership to AEP or Gutteridge, the Debtor's monthly payroll in the form of management fees to AEP was only $15,680.00.[3]

9. The Debtor was not obligated to obtain Court permission to pay its employees under previous ownership. Similarly, it was not obligated to obtain Court permission to pay employees under new ownership. This is especially true

---

[1] *See* Objection to Claim Number 8 at ¶ 9, asserting that AEP owns the Debtor.
[2] *See* Debtor's Monthly Operating Report for August 2014.
[3] *See* Debtor's Monthly Operating Report for April 2016.

{01716894;v1 }

3

since payroll under AEP/Gutteridge's ownership represented a <u>savings</u> to the Debtor's estate of over $6,000.00 per month.[4]

10. According to the Trustee's Objection, AEP owns the Debtor. Regardless of whether AEP or Gutteridge owns the Debtor. The new owner's rights as owner are no greater or less than the rights of previous ownership. If Court permission was not required for the Debtor to fund its payroll under Mr. Russial's ownership, it should not be required under the new ownership. The Trustee's objection on this basis lacks merit.

11. Even if the Court concludes that Court approval was needed for AEP's management fees, disallowance of AEP's claim remains unwarranted. The work done by AEP had direct, tangible benefits to the Debtor. AEP reengaged the Debtor's customers and rebuilt client relationships that had been ruined by total client neglect over many months under previous ownership. AEP's efforts returned the Debtor to profitability and positioned the Debtor for growth. As evidence of J3's collapse, the company had an operating loss of approximately $58,000 during March, April and May 2015, but was turned around under AEP's management and achieved an operating profit of approximately $49,000 during the remaining 7 months of that year.

12. The demonstrable value of AEP's efforts significantly exceeded the amount of the management fees sought to be disallowed. If this Court disallows AEP's proof of claim on technical grounds, it should concurrently grant

---

[4] In addition to payroll, the management fees paid to AEP included certain additional costs, such as the costs to maintain appropriate licensure. The Debtor was operating without appropriate licenses under both previous ownership and while the Trustee operated the business during the first Chapter 7 portion of this case. Structuring these costs as management fees also saved the Debtor the administrative expense of directly hiring replacement employees.

{01716894;v1 }

4

AEP a substantial contribution claim for the full amount of AEP's services under Section 503(b)(3)(D) of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Respondents respectfully requests that this Court enter an Order: (a) overruling the Objections to Claim Numbers 8 and 9, (b) allowing Claims 8 and 9 in their full amounts, and (c) granting such other relief as this Court deems equitable.

**Date:** November 30, 2016

        **Respectfully submitted,**

        **Hartman, Valeriano, Magovern & Lutz, PC**

**by:** /s/ George M. Lutz
_____

**George M. Lutz, Esquire**
**1100 Berkshire Boulevard, Suite 301**
**Wyomissing, PA 19610**
**Pa. Attorney ID No.: 46437**